IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDRA LOUISA REES,

      Plaintiff,

vs.                                                                     2:20-00575-KWR-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Sandra Louisa Rees' Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 22), which was fully briefed on May 5, 2021.  Docs. 25, 27, 28.  Pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3), the Honorable District Judge Kea W. Riggs referred this matter to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  Doc. 6.  Having carefully reviewed the parties' submissions and the administrative record, I recommend that the Court grant Ms. Rees' motion and remand this case to the Social Security Administration for an immediate award of benefits.

    I.      **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.   Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.   Background and Procedural History

Ms. Rees is a 58-year-old woman with an associate's degree in medical office administration. AR 39, 167, 203, 208, 2442.[4] She has a past work history as a taxi driver, housekeeper, cashier, certified nurse assistant, third key retail worker, telephone representative at a call center, hostess, and waitress. AR 50, 169, 208, 306, 451, 515, 1000–05, 1008–14, 2424–

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 19-1 through 19-21 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

27. At the time she applied for Social Security benefits, Ms. Rees lived with her husband and stepson. AR 261. Ms. Rees currently lives with her mother in Truth or Consequences, New Mexico. AR 2423.

Ms. Rees applied for Disability Insurance Benefits and Supplemental Security Income on April 13, 2011, alleging disability since January 19, 2007, because of bi-polar disorder, depression, chronic severe pain , PTSD (post-traumatic stress disorder), lower back injury, knee injury, upper back injury, joint pain, headaches, and IBS (irritable bowel syndrome). AR 165–74, 207. Her claims were denied initially and upon reconsideration, and she requested a hearing before an ALJ. AR 99–102, 113–15, 121–25. An ALJ held a hearing and then issued an unfavorable decision on February 14, 2014. AR 10–71. The Appeals Council denied Ms. Rees' request for review, and she appealed to this Court. AR 1–3; *see Rees v. Social Security Administration*, 2:15-cv-00519-JCH-GBW, Doc. 1. The Court remanded the case back to the administration because "the ALJ erred by excluding from her RFC determination Dr. Beale's finding of moderate limitations as to concentration, persistence, and pace without explanation." *Rees*, 2:15-cv-00519-JCH-GBW, Doc. 27 at 14 (magistrate judge's report and recommendation), Doc. 28 (district judge's adoption of the report and recommendation granting the motion to remand).

Following remand, a second ALJ held a hearing, then issued an unfavorable decision on March 29, 2018. AR 963–1025. Once again, Ms. Rees appealed the administration's denial to this Court.[5] *See Rees v. Social Security Administration*, 2:18-cv-00724-JHR. This Court

---

[5] Because this Court previously remanded Ms. Rees' case, Ms. Rees was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(a).

remanded the case back to the administration for a second time because the ALJ failed to provide reasons for rejecting mental limitations found by Dr. Vigil and Dr. Padilla. *Id.*, Doc. 25.

After the second remand, a third ALJ, Stephen Gontis, held a third hearing on March 27, 2020. AR 2417–60. On April 10, 2020, ALJ Gontis issued a partially favorable decision. AR 2329–31, 2334–60. The ALJ found that Ms. Rees met the insured status requirement of the Social Security Act through March 31, 2012. AR 2336. At step one, the ALJ found that Ms. Rees had not engaged in substantial, gainful activity since January 19, 2007, the alleged onset date. *Id*. At step two, the ALJ found that Ms. Rees suffered from the following severe impairments: "right shoulder degenerative joint disease, cervical and lumbar spine disorders, status-post knee replacements, depression, anxiety, and [] post-traumatic stress disorder (PTSD)." AR 2336–37. At step three, the ALJ found that none of Ms. Rees' impairments, alone or in combination, met or medically equaled a Listing. AR 2337–39. Because none of the impairments met a Listing, the ALJ assessed Ms. Rees' RFC.

The ALJ found that "prior to February 1, 2018, the date the claimant became disabled," Ms. Rees had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could occasionally reach overheard to the left and frequently reach in all other directions; she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds; she was able to perform simple, routine tasks and make simple, work-related decisions; she was able to occasionally interact with supervisors, coworkers, and the public; and she was able to tolerate few changes in a routine work setting.

AR 2339. The ALJ further found that "beginning on February 1, 2018, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the above limitations; and the claimant would also be off task 20% of the time due to her combined impairments." AR 2346.

At step four, the ALJ found that prior to February 1, 2018, Ms. Rees was capable of performing her past relevant work as a housekeeper, but that after February 1, 2018, her RFC prevented her from being able to perform her past relevant work. AR 2347. Consequently, the ALJ found at step four that Ms. Rees was not disabled prior to February 1, 2018. The ALJ found at step five that Ms. Rees was disabled after February 1, 2018 because there were "no jobs that exist in significant numbers in the national economy that [she] could perform." AR 2348. Because the ALJ found Ms. Rees disabled after her date last insured, the ALJ found her eligible for SSI, but ineligible for DIB benefits. AR 2349. Ms. Rees timely filed her third appeal to this Court seeking review of the partially favorable decision.[6]  Doc. 1.

The unfavorable part of the ALJ's decision is that Ms. Rees was not disabled from January 19, 2007, the alleged onset date, through February 1, 2018. The Court, therefore, will limit its analysis to this time period.

## IV.    Ms. Rees' Claims

Ms. Rees raises two arguments for reversal on appeal:  1) that the ALJ erred by failing to properly weigh the opinions of examining psychologist Dr. Eligio Padilla, Ph.D.; and 2)  the ALJ failed to include a necessary mental function-by-function assessment in the RFC. Ms. Rees also requests a remand for an immediate payment of benefits. Doc. 22 at 1–2. I find that the ALJ failed to provide legitimate reasons for discounting Dr. Padilla's opinions, and I recommend that the Court reverse and remand for an immediate award of benefits based on that issue. I do not, therefore, address Ms. Rees' second issue regarding a mental function-by-function assessment. *See Salazar v. Barnhart*, 468 F.3d 615, 626 n.7 (10th Cir. 2006).

---

[6] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued. 20 C.F.R. § 404.984 (b)–(d); AR 385. The claimant then has 60 days to file an appeal to this Court. 20 C.F.R. § 404.981.

V.     Discussion

    A.  <u>The ALJ failed to provide legitimate reasons for discounting Dr. Padilla's opinions</u>.

Ms. Rees contends that the ALJ failed to provide legitimate reasons for giving Dr. Padilla's opinions "partial weight" and, therefore, drawing the conclusion that she was not disabled prior to February 1, 2018. Doc. 22 at 8; Doc. 27 at 3–4. The Commissioner contends that the ALJ's RFC is supported by substantial evidence, and that the ALJ reasonably assessed Dr. Padilla's opinions. Doc. 25 at 5–18. I agree with Ms. Rees that the ALJ did not provide legitimate reasons for discounting Dr. Padilla's opinions.

On February 5, 2018,[7] Dr. Padilla performed a psychological evaluation of Ms. Rees. AR 1575–85. Dr. Padilla administered the Beck Depression Inventory (BDI-II), a Mini-Mental Status Exam (MMSE), the Wechsler Adult Intelligence Scale (WAIS-IV) and the Wide Range Achievement Test 4 (WRAT-4). AR 1576, 1579–83. Dr. Padilla further conducted an interview with Ms. Rees and reviewed medical records, including records from Ben Archer Medical Center ("Ben Archer") from 2007 through 2013; a physical evaluation by Dr. Carlos Pastrana dated August 6, 2011; a psychiatric evaluation by Mark Beale, M.D., dated August 6, 2011; a letter from Ms. Rees' long-time therapist, Penni Sears, LMFT,[8] LADAC,[9] dated July 19, 2013; and a function report by Ms. Rees dated December 19, 2014. AR 1576.

In his evaluation, Dr. Padilla reviewed Ms. Rees' family, educational, employment, marital, and medical history. Dr. Padilla noted that both of Ms. Rees' parents were alcoholics,

---

[7] The date of the evaluation is noted as February 5, 2018. AR 1576. In the body of the evaluation, it notes the evaluation is scheduled for "January 5, 2018." The Court presumes the January 5, 2018 date is a typographical error as the parties agree Dr. Padilla's evaluation took place in February of 2018. Doc. 22 at 5; Doc. 25 at 7.

[8] Licensed Marriage and Family Therapist.

[9] Licensed Alcoholism and Drug Abuse Counselor.

and that she often was left alone as a child. AR 1577. Dr. Padilla also noted Ms. Rees' traumatic experience of her father beating her and kicking her out of the house when she got pregnant at the age of thirteen. *Id*. Dr. Padilla further noted that Ms. Rees struggled in school but managed to graduate after being placed in remedial classes. *Id*. Dr. Padilla explained that in 2016 Ms. Rees earned an associate of arts degree in business office management from Colorado Technical University "[w]orking online and taking Adderall [to] allow her to manage her ADHD and to work at her own pace, with frequent breaks." *Id*. At the time of the examination, Ms. Rees was working to earn her bachelor's degree online from the same institution. *Id.*

Dr. Padilla noted that Ms. Rees experienced an abusive relationship with her first husband whom she married at 17. *Id*. Dr. Padilla discussed how Ms. Rees "still suffers from intrusive, disturbing thoughts and nightmares about being verbally, emotionally and physically abuse[d] by her husband and by her father." *Id*. Dr. Padilla noted her medical history, including a "thorough medical history and physical examination" by Dr. Pastrana. AR 1578. Dr. Padilla considered Dr. Pastrana's findings of chronic neck, upper back and lower back pain, pain in Ms. Rees' knees, irritable bowel syndrome since 2002, frequent headaches, hypertension and a history of bipolar disorder, depression, and PTSD. *Id*.

Dr. Padilla's review of medical records from Ben Archer revealed

> that Ms. Rees was diagnosed with depression in October 2007 and was prescribed Paxil for depression in October of 2009, Adderall for ADHD in June 2010 and Buspar for anxiety in July 2011. She was diagnosed with severe Major Depressive Disorder and Chronic PTSD in March 2011. In August, anxiety disorder was added to Axis I diagnoses. Over the past 11+ years, Ms. Rees has been prescribed antidepressant (e.g., Effexor, Paxil), anxiolytic[10] (Lorazepam and Buspar), ADHD (Ritalin) and sleep (Ambien) medications.

---

[10] An anxiolytic is "[a] drug used to treat symptoms of anxiety, such as feelings of fear, dread, uneasiness, and muscle tightness, that may occur as a reaction to stress." https://www.cancer.gov/publications/dictionaries/cancer-terms/def/anxiolytic (last visited Sept. 27, 2021).

AR 1578. The Ben Archer records included treatment notes from Penni Sears who treated Ms. Rees for prolonged PTSD throughout 2012 and 2013 (AR 722–44, 778–83, 786–811, 814–23, 826–39, 842–83, 947), and treatment notes from Francis Glasscock PMH,[11] CNS[12] who provided medication management for Ms. Rees' PTSD during this same time period (AR 718–19, 774–75, 784–85, 798–99, 812–13, 824–25, 840–41, 885–86).

Dr. Padilla diagnosed Ms. Rees with major depressive disorder, recurrent, severe without psychotic features; chronic posttraumatic stress disorder; and attention deficit/hyperactivity disorder, predominantly inattentive type. AR 1583. He also filled out a Medical Assessment of Ability to do Work-Related Activities (Mental) ("Medical Assessment") which asked him to "consider the patient's medical history and the chronicity of findings as from before 03/31/12 to current examination." AR 1588. Dr. Padilla assessed Ms. Rees with the following marked and moderate limitations:

- Marked limitation in understanding and remembering detailed instructions;
- Marked limitation in carrying out detailed instructions;
- Marked limitation in maintaining attention and concentration for extended periods of time (i.e., 2-hour[] segments);
- Marked limitation in sustaining an ordinary routine without special supervision;
- Moderate limitation in working in coordination with/or proximity to others without being distracted by them;
- Marked limitation in completing a normal workday and workweek without interruptions from psychological based symptoms and in performing at a consistent pace without unreasonable number and length of rest periods;
- Moderate limitation in accepting instructions and responding appropriately to criticism from supervisors;
- Moderate limitation with getting along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Marked limitation in responding appropriately to changes in the workplace; and
- Moderate limitation in setting realistic goals or make plans independently of others.

---

[11] Psych Nurse Practitioner.

[12] Clinical Nurse Specialist.

AR 1588–89.  Dr. Padilla also opined that Ms. Rees' depressive syndrome resulted in marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.  AR 1590.

"It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Sitsler v. Barnhart*, 182 F. App'x 819, 823 (10th Cir. 2006) (unpublished) (quoting SSR 96–8p, 1996 WL 374184, at *7).  An ALJ must provide specific, legitimate reasons for rejecting an examining physician's opinions.  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).  If the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  As a baseline, the ALJ must support his or her findings with specific weighing of the evidence, and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009–10.  This does not mean that an ALJ must discuss every piece of evidence in the record.  But it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting.  *Id.* at 1010.  An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*.  In this case, the ALJ failed to provide legitimate reasons for discounting Dr. Padilla's opinions.

The ALJ expressly weighed Dr. Padilla's opinions, giving Dr. Padilla's opinions "partial weight."  AR 2345.  He failed, however, to offer legitimate reasons for discounting some of the mental limitations found by Dr. Padilla, at least insofar as those limitations were intended to

10

represent Ms. Rees' functioning prior to February 2018.  The ALJ discounted Dr. Padilla's opinions as applying prior to February 2018 for three reasons.  First, he explained, "there is no objective support for any marked limitation in adaptation or any other marked limitations prior to February 2018."  AR 2345.  Second, he reasoned that "Dr. Padilla's opinions were not well explained or supported."  *Id*.  Third, he explained that Dr. Padilla noted that Ms. Rees was obtaining her bachelor's degree.  *Id*.  These are not legitimate reasons for rejecting the marked and moderate limitations assessed by Dr. Padilla.

The problem with the ALJ's first reason is that he ignored the information that Dr. Padilla reviewed in formulating his opinions.  The ALJ found that there was "no objective support for any marked limitation in adaptation or any other marked limitations prior to February 2018."  AR 2345.  But as discussed above, Dr. Padilla reviewed Ms. Rees' medical history going back as far as 2007, including treatment notes from her mental health counselor, Penni Sears, who treated Ms. Rees for mental health issues throughout 2012 and 2013.  The ALJ appears to believe that Ms. Rees' mental health records only include self-reported symptoms and are not "objective."  The Tenth Circuit, however, does not subscribe to this point of view.  Psychological medical evidence is "objective" evidence.  *See Luna v. Bowen*, 834 F.2d 161, 162 (10th Cir. 1987); *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished) ("The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.  A psychological opinion need not be based on solely objective 'tests'; those findings may rest either on observed signs and symptoms or on psychological tests.") (internal quotation marks omitted).  The evidence in the record shows that Ms. Rees' mental health providers observed signs and symptoms of mental impairments well before February 2018.  For example, Ms. Sears observed that Ms. Rees experienced headaches, fatigue, insomnia, stomach upset,

irritability, anxiety, and depression in 2012 and 2013. AR 723, 736, 806, 809, 816, 818, 822, 826, 829, 833, 835, 839, 844, 848, 854, 860, 862, 864, 866, 876, 879, 881, 883. Dr. Padilla also noted that Ms. Rees was first diagnosed with depression in 2007, and that she had a raw score of 36/63 on the BDI-II, "which is consistent with major depression." AR 1579, 1584.

Further, Dr. Padilla was asked to consider Ms. Rees medical history and the chronicity of findings from before March of 2012 in formulating his opinions. AR 1588. Dr. Padilla reviewed Ms. Rees' medical history and records dating back to 2007. There is no evidence that Dr. Padilla did not take Ms. Rees' medical history into consideration when formulating his opinions. Indeed, Dr. Padilla makes clear that he did consider Ms. Rees' medical and psychological history. Dr. Padilla explained that

> there is ample evidence in the record and in this evaluation to have great confidence in the diagnosis of Major Depression, ADD and PTSD . . . . [H]er recurring depression, formally diagnosed in 2007, first manifested at age thirteen when she was kicked out of her [home] because of her pregnancy. Her PTSD goes back at least to the verbal and physical abuse suffered at the hands of her first husband, with her history of being beaten and banished by her parents exacerbating her symptoms. Finally, her ADD is in all probability a developmental issue that has interfered with learning in general, and comprehension, retention and application of new information all of her life.

AR 1584.

The ALJ had an obligation to explain why the historical information reviewed by Dr. Padilla, in addition to his own examination of Ms. Rees, did not provide objective support for "a marked limitation in adaptation or any other marked limitations prior to February 2018." The ALJ failed to do so. By discounting Dr. Padilla's opinions for lack of "objective support," the ALJ impermissibly substituted his own medical judgment for that of a mental health professional. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). "This, in turn, led the ALJ to make conclusions about the effects of plaintiff's mental impairments on [her] ability to

work that did not fairly take into account all the evidence." *Id*. The ALJ's first reason for discounting Dr. Padilla's opinions is, therefore, not legitimate.

The ALJ's second reason for discounting Dr. Padilla's opinions—that they are not "well explained or supported"—also is not legitimate. In support of his second reason, the ALJ relies on a neurological exam in December of 2017 performed by Javed Iqbal, M.D. to address Ms. Rees' reports of memory loss. AR 2345 (citing AR 2913). The ALJ notes that the "neurological and psychiatric examinations were within normal limits." *Id*.

As an initial matter, the ALJ characterizes the December 2017 record as having conducted a "psychiatric examination." *Id*. This is misleading. A review of this record shows that Ms. Rees was an established patient "typically []seen for neuropathy." AR 2912. On December 13, 2017, Ms. Rees presented with reports of memory loss. *Id*. While the "review of systems" notes "Psychiatric Present- Memory Loss. Not Present- Depression, Insomnia and Mood changes," Dr. Iqbal did not perform a psychiatric examination. Rather, he performed a neurologic examination and evaluation. AR 2913.

> Dr. Iqbal's neurologic examination revealed that Ms. Rees was
>
> alert and oriented x 3 with no impairment of recent or remote memory, able to name objects and repeat phrases. Appropriate fund of knowledge, normal visual acuity, pupils equal and reactive to light and accommodation, normal sensation of trigeminal nerves, symmetrical functioning of facial nerves, normal hearing, normal gag reflex, symmetrical functioning of accessory nerves and symmetrical functioning of hypoglossal nerve. . . . Speech is fluent. Comprehension is normal.

AR 2913. The ALJ does not explain how this single neurological exam contradicts the years of medical records reviewed by Dr. Padilla that chronicle the major depressive disorder, chronic PTSD, anxiety, and ADHD that Ms. Rees suffered well before December 2017. The ALJ also does not explain how Dr. Iqbal's conclusions contradict Dr. Padilla's opinions that Ms. Rees had

marked limitations in completing a normal workday and workweek without interruptions from psychological based symptoms and in performing at a consistent pace without unreasonable number and length of rest periods.  *See* AR 1588.  The ALJ further does not explain how Dr. Iqbal's conclusions contradict Ms. Rees' moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers and peers without distracting them or exhibiting behavior extremes.  *See* AR 1589.  Because the ALJ failed to discuss probative and contradictory evidence, his second reason for discounting Dr. Padilla's opinions is not legitimate.

Continuing to focus on Ms. Rees' intellect, the ALJ explained that Ms. Rees "complained of some memory loss but she had appropriate fund of knowledge and no impairment of recent or remote memory.  It was also noted that the claimant was obtaining her Bachelor's degree."  AR 2345.  Again, the ALJ discounts Dr. Padilla's opinions without discussing whether records reviewed by Dr. Padilla could support moderate and marked limitations in mental functioning prior to February 1, 2018.  Dr. Padilla explained that "[m]y first impression was that I was evaluating a person of at least average intelligence, but I failed to take into account the effects of her attention deficit."  AR 1584.  The ALJ does not explain how having an appropriate fund of knowledge and no impairment of recent or remote memory contradicts Dr. Padilla's finding of a marked limitation in sustaining an ordinary routine without special supervision.  *See* AR 1588.  The ALJ also does not explain how obtaining a bachelor's degree online and at her own pace contradicts Ms. Rees' moderate limitation in working in coordination with/or in proximity to others without being distracted by them, or a marked limitation in completing a normal workday and workweek without interruptions from psychologically based symptoms.  *Id*.

14

Further, the ALJ does not address whether the circumstances surrounding Ms. Rees' learning environment would affect her ability to perform work-related functions. For example, Dr. Padilla noted that while Ms. Rees earned an associate degree and was working on her bachelor's degree, but he also explained that "[w]orking online and taking Adderall allow her to manage her ADHD and to work at her own pace, with frequent breaks. She continues working online to earn a BA in the same discipline from the same online institution." AR 1577. With regard to Ms. Rees' goal of "doing medical coding and billing at home," Dr. Padilla opined that "even if she can obtain such work, if will be a completely different process because someone else will be setting deadlines, which are likely to be rigid and with no tolerance for delay." AR 1584. The ALJ discounted Dr. Padilla's opinions because Ms. Rees was earning her bachelor's degree, but he does not explain why earning a bachelor's degree online and working at her own pace contradicts Dr. Padilla's findings of marked limitations in her ability to perform at a consistent pace without unreasonable number and length of rest periods and maintaining attention and concentration for extended periods of time. *See* AR 1588. The ALJ's third reason for discounting Dr. Padilla's opinions, therefore, is not legitimate. Because the ALJ failed to provide legitimate reasons for discounting Dr. Padilla's opinions, he failed to follow the correct legal standards, and remand is required.

The Commissioner argues that other evidence in the record, including Ms. Rees' testimony at the March 2020 hearing and an April 2018 letter written by Dr. Iqbal, "demonstrates that Plaintiff's inability to remember things did not become severe enough to warrant withdrawing from school until April 2018." Doc. 25 at 11. The ALJ, however, did not rely on this evidence to support his reasons for discounting Dr. Padilla's opinions. The Commissioner's argument is nothing more than a post hoc rationalization that is not apparent from the ALJ's

decision. It is not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding" if the "ALJ did not provide these explanations" himself. *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Id*. at 1207–08 (citations omitted). The Commissioner's arguments are, therefore, without merit.

B. Remand for an Immediate Award of Benefits

Ms. Rees requests that the Court remand this case for an immediate award of benefits. Doc. 22 at 17–18; Doc. 27 at 11–12. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart,* 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotations omitted). The Commissioner "is not entitled to adjudicate a case ad infinitum until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993); *see also Huffman v. Astrue*, 290 F. App'x 87, 90 (10th Cir. 2008*)* (unpublished) (remanding for an immediate award of benefits where ALJ's decision was too vague for judicial review, case had previously been remanded, and matter had been pending for over six years); *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.

16

1983) (remanding for an immediate award of benefits where ALJ's decision was not supported by substantial evidence and matter had been pending for over eight years).[13]

This case has been pending for over ten years. There have been three administrative hearings, and this will mark the third remand from this Court. The Commissioner has twice failed to follow the correct legal standards when analyzing Dr. Padilla's opinions—once in this case and once in a previous appeal to this Court. *See* AR 2470–73. Given the lengthy delay that has occurred from the Commissioner's repeated erroneous dispositions of this case, I recommend that the Court exercise its discretion and remand for an immediate award of benefits beginning on Ms. Rees' alleged onset date of January 19, 2007, through January 31, 2018.

## VI.     Conclusion

The ALJ failed to provide legitimate reasons for discounting Dr. Padilla's opinions. Therefore, the correct legal standards were not applied. I recommend that the Court grant plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 22), and that it remand the case for an immediate award of benefits.

---

[13] The Commissioner argues that an immediate award of benefits is not appropriate because Ms. Rees "has not overwhelmingly established—through the evidence found in the record—that she became disabled prior to February 1, 2018." Doc. 25 at 18. The Commissioner does not cite any authority that suggests that a plaintiff must "overwhelmingly establish" that she became disabled by a certain date before this Court may order an immediate award of benefits. The case cited by the Commissioner, *Groberg v. Astrue*, 415 F. App'x 65, 73 (10th Cir. 2011) (unpublished), does not establish that requirement. In *Groberg*, the Tenth Circuit found in that "there is no reasonable probability that [plaintiff] would be denied benefits." But the Tenth Circuit did not hold that a plaintiff must show that the record overwhelmingly establishes that he or she became disabled by a specific date as a prerequisite for an immediate award of benefits.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge